1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   LARRY A.,                              Case No.:  3:23-cv-01101-W-DTF

12                          Plaintiff,
                                           **REPORT AND**
13   v.                                     **RECOMMENDATION REGARDING**
                                           **JOINT MOTION FOR JUDICIAL**
14   MARTIN O'MALLEY, Commissioner of       **REVIEW**
      Social Security,
15                                          **[ECF No. 11]**
                          Defendant.
16

17

18

19        On June 13, 2023, Plaintiff Larry A.[1] commenced this action against Defendant

20   Kilolo Kijakazi[2], Acting Commissioner of Social Security, for judicial review under 42

21   U.S.C. 42 U.S.C. § 405(g) of the finding that Plaintiff was not disabled under the Social

22   Security Act. (ECF No. 1.)  Defendant filed the Administrative Record on August 11,

23   2023.  (ECF Nos. 6, 7.)  On December 27, 2023, the parties filed a Joint Motion for

24

25

26
     ───────────────────────
27   [1] The Court refers to Plaintiff using only his first name and last initial pursuant to the Court's Civil
     Local Rules.
28   [2] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a
     party pursuant to Fed.R.Civ.P. 25(d).

                                              1

Judicial Review of Final Decision of the Commissioner of Social Security.  (ECF No. 11.)

This Report and Recommendation is submitted to United States District Judge Thomas J. Whelan under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c).  For the following reasons, the Court recommends that the final decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

## I.    BACKGROUND

### A.    Procedural History

On April 15, 2011, Plaintiff, born in 1963, filed an application for supplemental social security income under Title XVI of the Social Security Act.  (AR 52.)[3] In that application, he alleged disability due to hypertension, carpal tunnel syndrome, chest pain, and depression.  (AR 54.)  The claims were denied on July 26, 2011, and again on February 22, 2012 after reconsideration.  (AR 52.)  An administrative hearing was conducted on July 11, 2013 before Administrative Law Judge ("ALJ") O. Lisa Dabreu. (*Id.*)  On December 27, 2013, the ALJ issued a decision and concluded that Plaintiff was not disabled.  (AR 52-61.)

Plaintiff appealed this decision to the Appeals Council who remanded the matter for a new hearing and directed the ALJ to consider the opinion of Dr. Mierhofer who performed a consultative examination on September 23, 2013 and further noted that "an evaluation of the [Plaintiff's] mental impairments was necessary."  (AR 130.)  A new hearing was scheduled for March 10, 2016 but Plaintiff was unable to attend due to lack of access to transportation.  (*Id.*)

---

[3]  "AR" refers to the Administrative Record filed on August 11, 2023. (ECF Nos. 6, 7.)  The Court's citations to the AR use the page references in the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF").  For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

Plaintiff filed a new application on July 19, 2016.  (AR 137.)  In this application, he alleged disability since December 31, 2010 due to "adjustment disorder with anxious mood, borderline intellectual functioning, history of substance abuse, depression, carpal tunnel syndrome, and hypertension."  (AR 133.)  On December 2, 2016 ALJ Karen A. Cornick-Craig  issued a decision and again concluded that Plaintiff was not disabled and denied both claims of supplemental security income and disability insurance benefits. (AR 142.)

On September 20, 2018, Plaintiff filed a new application for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act.  (AR 315-325.)  He alleges that he has been disabled and unable to engage in substantial gainful activity since September 1, 2017, due to "angina, hypertension, early arthritic changes of the left wrist, history of carpal tunnel syndrome, cervical, thoracic and lumbar strain/sprain, and bilateral shoulder strain/sprain."  (AR 151.)  These claims were denied on February 13, 2019, and again on reconsideration on July 26, 2019.  (AR 148.)  A telephonic hearing was held on July 7, 2020.  (*Id.*)  On November 4, 2020, ALJ Howard K. Treblin issued a decision and concluded that Plaintiff was not disabled.  (AR 148-157.)  Plaintiff appealed that decision to the Appeals Council who remanded the case for a new hearing on August 3, 2021.  (AR 164-166.) Specifically, the Appeals Council found that the ALJ had relied on the previous 2014 unfavorable decision rather than evaluating the more recent 2016 unfavorable decision. (AR 164.)

A new hearing was held by on January 7, 2022.  (AR 10-19.)  On March 14, 2022, ALJ Treblin issued a decision and concluded that Plaintiff was not disabled. (*Id.*) Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on April 13, 2023. (AR 1-6.)  He then commenced this action pursuant to 42 U.S.C. § 405(g).

/ / /

/ / /

**B.   ALJ's Decision**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since September 1, 2017, the alleged onset date of his disability. (AR 13.)

At step two, the ALJ found that Plaintiff had the following severe impairments: "angina; hypertension; early arthritic changes of the left wrist; history of carpal tunnel syndrome; cervical, thoracic, and lumbar strain/sprain; and bilateral shoulder strain/sprain." (*Id.*)   The ALJ also determined that "[t]he claimant has not alleged any mental impairments nor is there any medical evidence of a medically determinable mental impairment.  The most recent treatment records since the prior unfavorable hearing decision reported normal mental status examinations." (*Id.*)    The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (*Id.*)

The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [M]edium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; can stand and/or walk for 6 hours out of an 8-hour workday; can sit for 6 hours out of an 8-hour workday; is unlimited with respect to pushing, pulling, postural and manipulative activities, other than as indicated for lifting and/or carrying.

(AR 13.)

At step four, the ALJ concluded that Plaintiff "did not perform his past work at substantial gainful activity levels, thus, under the regulations his work activity is not past relevant work."  (AR 18.)

At step five, the ALJ found, based on testimony from a vocational expert, that Plaintiff was capable of performing the requirements of the representative unskilled

4

medium occupations of dining room attendant, counter supply, and kitchen helper.  (AR 19.)  Accordingly, the ALJ found that Plaintiff had not been under a disability from September 6, 2018, through the date of his decision. (*Id.*)

**C.   Disputed Issues**

The parties have briefed two issues[4] in their joint motion which Plaintiff asserts are grounds for reversal: (1) whether the AJB was required to consider and develop the record as to Plaintiff's borderline intellectual functioning; and (2) whether the ALJ properly formulated Plaintiff's RFC.

## I.   LEGAL STANDARDS

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'" *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. ----, ----, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational

---

[4] The Court has reordered Plaintiff's arguments to approximate the order in which these issues would arise in the five-step sequential evaluation process.

interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id.*

## III.    DISCUSSION

### A.    <u>Borderline Intellectual Functioning</u>

Plaintiff argues that the ALJ erred in failing to consider his borderline intellectual functioning and by failing to develop the record regarding Plaintiff's borderline intellectual functioning.  (Jt. Mot., ECF No. 11, at 11-14.)  Specifically, in Plaintiff's previous claims in 2014 and 2016, the ALJ found that Plaintiff had severe mental impairments including finding that Plaintiff had borderline intellectual functioning in 2016.  (AR 133.)  However, in 2022, the ALJ found "no mental impairment" and further stated that there was no "evidence of a medically determinable mental impairment."  (AR 13.)

Defendant argues in response that Plaintiff "has not alleged any mental impairments nor is there evidence of a medically determinable mental impairment."  (Jt. Mot. at 15.)

#### 1.    Applicable standards

It is an issue of legal error when determining whether an ALJ satisfied their duty to develop the record.  *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014.)  A Social Security hearing is "inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  That duty "extends to the represented as well as to the unrepresented claimant."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  "In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel."  *Mayes v. Massanari*, 276 F.3d 453, 459

(9th Cir. 2001).  "The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it."  *Diedrick v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017).

Here, the Court agrees that the ALJ should have further developed the record related to Plaintiff's intellectual functioning.  Specifically, the Appeals Council directed the ALJ in the August 2021 remand order to "evaluate the most recent unfavorable decision," which was the December 2016 ruling at that time.  In that 2016 decision, the ALJ found that Plaintiff had the "following severe impairments: adjustment disorder with anxious mood, *borderline intellectual functioning*, history of substance abuse, depression, carpal tunnel syndrome, and hypertension."  (AR 133.) (emphasis added.) The 2016 RFC limited Plaintiff to:

> "performing simple repetitive work with instructions given verbally or by demonstration to accommodate limitations in reading ability.  He can have occasional interaction with other employees, supervisors, and the public.  He can perform jobs that require only basic math skills, and he needs to avoid work related hazards."

(AR 136.)

The ALJ in the 2016 decision considered the opinions of Dr. Maierhofer, who conducted a psychological exam of Plaintiff in 2011, along with Dr. Leaf,  and found that Plaintiff had moderate difficulties in social functioning, "concentration, persistence, or pace." (AR 134-35.)  Because the ALJ was specifically directed to consider the 2016 decision in their 2022 findings, it is evident in the record that Plaintiff had a history of mental impairment.

Instead, in 2022, the ALJ found that Plaintiff has "no mental impairment" and there is "no medical evidence of a medically determinable mental impairment." (AR 10, 13.)  However, this conclusion is not supported by the evidence in the record.  The 2016 ALJ decision noted that Dr. Maierhofer's review of Plaintiff education records showed that he had an "Individual Education Plan (IEP) while in high school" and received special education in math, reading and spelling.  (AR 137.)  In September of 2018, Nurse Practitioner Skopek noted that Plaintiff "appears to be a poor historian; doesn't recall

meds, timeline, and is ambiguous with description of symptoms." (AR 474.) A similar notation was made by Dr. Sabourin on December 17, 2018 when he wrote that Plaintiff is a "relatively poor historian" and cannot "remember any times or dates or much in the way of any treatment he ever had." (AR 506.) In December 14, 2019, Plaintiff was seen by Dr. Bui, a cardiologist, who noted in the record "I do not know how much [Plaintiff] actually understands of what is told to him in the office." (AR 608.) As set forth above, the 2016 ALJ decision itself found that Plaintiff had the severe impairment of borderline intellectual functioning. (AR 133.)

Defendant argues in response that "since the prior unfavorable decision, Plaintiff had normal mental status examinations." (Jot. Mot. at 15 citing AR 702, 732, 743, 750, 786.) The first record the Defendant relies on is a cardiology examination on October 21, 2021. (AR 702.) There is no mental impairment assessment in this exam. The second record is for an office visit indicating "patient is here for kidney labs . . . [h]e is being followed by a cardiologist and they are requesting to have new labs for his kidneys." (AR 732.) Again, this is an office visit totally unrelated to mental impairment issues. The third record is a visit with his primary care physician where he complained of "dyspnea on exertion" which consists of shortness of breath while exerting himself.[5] (AR 743.) Once again, this is not a medical examination focused on Plaintiff's mental capacity or potential limitations. The fourth record reports Plaintiff is being seen to treat his hypertension, as well as an "Annual Health Assessment" and once again, there is no specific mental or intellectual impairment examination conducted. (AR 750.) Finally, the last record relied upon by Defendant is an examination by his primary care physician for "muscle spasm, preventive care, and shortness of breath." (AR 786.) This shows a selective consideration of evidence when the ALJ found no evidence of mental health

---

[5] *See* https://www.ncbi.nlm.nih.gov/books/NBK499965/#:~:text=Dyspnea%20is%20a%20sensation%20of,%2C%20lungs%2C%20and%20chest%20wall. (website last visited June 21, 2024.)

treatment which is engaging in impermissible cherry-picking of the record.  *See Garrison,* 759 F.3d at 1018 n 23. Moreover, there are no medical opinions as to Plaintiff's mental impairments reviewed or considered by the ALJ in his opinion.

Here, the Court finds ALJ's opinion that that there is no "mental evidence of a medically determinable mental impairment" is not supported by the record.  There is sufficient evidence in the record to support Plaintiff's borderline intellectual functioning, as previously discussed in the 2016 opinion, as a medically determinable impairment. Although the ALJ need not discuss every piece of evidence in the record, they cannot ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).  The ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  "In cases of mental impairments, this duty is especially important."  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  Throughout the record there are references to Plaintiff's possible mental and intellectual impairments and thus, the ALJ's duty to develop the record is "heightened."  *See Tonapetyan*, 242 F.3rd at 1150; *see also Plummer v. Apfel,* 186 F.3d 422, 434 (3rd Cir. 1999) (when there is suggestion of mental impairment, an ALJ must inquire into the current status of that impairment and its possible effect on the claimant's ability to work.); *Hilliard v. Barnhart*, 442 F.Supp.2d 813, 817 (N.D. Cal. 2006) (a claimant who raises a suspicion concerning their alleged cognitive impairment triggers the need for development of an adequate record.)

The Court concludes that the ALJ erred by failing to develop the record as to Plaintiff's mental and intellectual impairments.  Moreover, the Court also finds that the ALJ's finding that there is no "medical evidence of a medically determinable mental impairment" is not supported by substantial evidence.

Accordingly, the Court **RECOMMENDS** that the Commissioner's decision be remanded to further develop the record as to determine the extent of Plaintiff's borderline intellectual functioning.

**B.     Residual Functional Capacity**

Plaintiff contends that the ALJ erred in his formulation of his residual functional capacity ("RFC") by failing to consider all of Plaintiff's medical and mental limitations. (Jot. Mot. at 3-8.)  Defendant responds that the RFC is supported by substantial evidence and the ALJ provided reasons for not fully crediting Plaintiff's testimony as to the severity of his symptoms.  (*Id.* at 8-11.)  As an initial matter, for the reasons set forth above, remand is appropriate to reconsider Plaintiff's RFC after developing the record as to his possible intellectual impairments.  These impairments may also affect the analysis of the medical records as it relates to the reliance of the ALJ on Plaintiff's self-reporting medical symptoms.

**1.     Applicable standards**

Residual functional capacity is defined as "the most you can still do despite your limitations."  *See* 20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, . . . mean[ing] 8 hours per day, for 5 days a week, or an equivalent work schedule."  SSR 96-8P, 1996 WL 374184, at *2 (emphases omitted).  The RFC assessment is first used at step four of the sequential evaluation process to decide if the claimant can perform her past relevant work.  20 C.F.R. § 404.1545(a)(5)(i).  If the ALJ decides that the claimant cannot perform his past relevant work, the same RFC assessment is used at step five of the sequential evaluation process to decide if the claimant can adjust to any other work that exists in the national economy.  *Id.* § 404.1545(a)(5)(ii).  In determining a claimant's RFC at steps four and five, the ALJ must consider all relevant evidence in the record, including medical history; medical signs and laboratory findings; lay evidence; the effects of treatment, including disruption to routine and side effects of medication; and the effects of symptoms, including pain.  SSR 96-8P, 1996 WL 374184, at *5; *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

RFC assessment must always consider and address medical source opinions and, if the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8P, 1995 WL 374184, at *7.

Here, as set forth above the ALJ found that Plaintiff had the following RFC:

[M]edium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; can stand and/or walk for 6 hours out of an 8-hour workday; can sit for 6 hours out of an 8-hour workday; is unlimited with respect to pushing, pulling, postural and manipulative activities, other than as indicated for lifting and/or carrying.

(AR 13.)

## 2. ALJ's finding that Plaintiff could perform medium work not supported by substantial evidence

The Court finds that substantial evidence in the record does not support the RFC formulated by the ALJ.  First, the ALJ found that "[c]ardiac workups were [] negative for acute issues." (AR 15.)  To support this conclusion, the ALJ cites Exhibit 3F/3-4, 11 (AR 488-89, 496.)  This exhibit is a medical record of Plaintiff's examination at Tri-City Medical Center on October 19, 2018 in which he "present[ed] . . . for evaluation of 3 days of left-sided chest pain" which he described as a "cramp-like sensation."  (AR 488, Ex. 3F at 3.)  Defendant then cites to the description of the chest x-ray Plaintiff received that day which indicated that Plaintiff had "mild cardiomegaly" which is an "enlarged heart.[6]  However, the Defendant does not cite to the record that shows later that same day Plaintiff received a CT pulmonary angiogram.  (AR 495, Ex. 3F at 10.)  This scan showed that Plaintiff had bilateral atelectasis which are collapsed lungs,[7] a mild

---

[6] *See* https://my.clevelandclinic.org/health/diseases/21490-enlarged-heart-cardiomegaly (website last visited June 25, 2024.)
[7] *See* *https://www.medicalnewstoday.com/articles/322027* (website last visited June 25, 2024.)

ascending thoracic aortic aneurysm, and suspected left ventricular hypertrophy which is a thickening of the wall of the heart's main pumping chamber.[8]  (*Id.*)

The ALJ also found that treatment records in 2019 include "examination findings indicated normal heart, lung, musculoskeletal, and neurological findings."  (AR 15 citing to Exhibit 7F/3-4, 8, 10 (AR 557-56, 562, 564); 8F/10, 14, 24 (AR 591, 595, 605);  9F/1-2, 4-5; 608-09, 611-612.)  Exhibit 7F is a medical record for an exam Plaintiff had with Blue Coast Cardiology on February 15, 2019 in which cardiologist Dr. Kenneth Carr noted after reviewing Plaintiff's EKG and stress EKG that "[o]f concern was apical thickening consistent with apical hypertrophic cardiomyopathy" which is a "rare variant of hypertrophic cardiomyopathy characterized by abnormal heart muscle thickening, specifically affecting the left ventricle's apex."[9]

Second, the ALJ found that Plaintiff has "no significant ... respiratory impairment that would corroborate his allegations of breathing problems limiting his functioning." (AR 16 citing Ex. 11F/1 (AR 702).)  This exhibit involves an exam by Blue Coast Cardiology where Plaintiff presented with "chest discomfort and shortness of breath" and Defendant claims this "physical examination was normal."  (AR 16, 702.)  However, Defendant does not include the assessment and treatment notes which indicate that Plaintiff has "dyspnea on exertion," high blood pressure, and high levels of cholesterol. (AR 703.)  In addition, it is indicated that Plaintiff "continues to have shortness of breath" and the doctor decided to "move forward with exercise treadmill stress test to evaluate for any myocardial ischemia that could be causing his shortness of breath."  (*Id.*)

The ALJ also states that the treatment records from Vista Community Clinic in 2021 showed "no worsening in claimant's impairments" and he was "treated with routine, conservative medication management for his hypertension and other conditions

---

[8] https://www.mayoclinic.org/diseases-conditions/left-ventricular-hypertrophy/symptoms-causes/syc-20374314 (website last visited June 25, 2024.)
[9] *See https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10410186/* (website last visited June 25, 2024.)

such as Albuterol for complaints of shortness of breath."  (AR 16 citing Ex. 12F/1-3 (AR 730-732).)  This exhibit is a visit Plaintiff had at the Vista Community Clinic on December 6, 2021 and the notes indicate that it was not a physical examination but instead it is indicated that "patient is here for kidney labs… [h]e is being followed by cardiologist and they are requesting to have new labs for his kidneys." (*Id.*)

The ALJ also found that  Plaintiff's treatment records in 2019 contained "examination findings indicat[ing] normal … musculoskeletal . . . findings."  (AR 15 citing Exhibits 7F/3-4, 8, 10 (AR 557-56, 562, 564); 8F/10, 14, 24 (AR 591, 595, 605); 9F/1-2, 4-5; 608-09, 611-612).)  The ALJ refers to a portion of the medical records for an exam Plaintiff had on January 2, 2019, *see* AR 605, but fails to refer to other pages from that examination where it is indicated that Plaintiff had joint pain and muscle cramps, while also noting that he had been diagnosed with carpal tunnel syndrome in 2018.  (AR 602, 604.) At this visit Plaintiff also complained of "constant locking of joints of his hands and legs bilaterally," and "associated numbness." (AR 603.)  On April 24, 2019, Plaintiff presented with "muscle cramping," which continued even after he discontinued the atorvastatin per the instructions as a possible reason for the cramping.  (AR 671.)  Plaintiff presented with muscle spasms and cramping in his "thighs and calves" on December 9, 2019.  (AR 665.)  He also stated that it was "exacerbated with walking." (*Id.*)  On January 7, 2020 Plaintiff reported that he was experiencing "spasms [and] cramping [that] are exacerbated by walking."  (AR 652.)  It was also noted that he had a diagnosis of bilateral carpal tunnel syndrome.  (AR 653.)

The Court finds that ALJ's characterization of the record is misleading. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (stating that it is error for an ALJ to paraphrase medical evidence in a manner that is "not entirely accurate regarding the content or the tone of the record.").  Contrary to the ALJ's statements that Plaintiff  had received "minimal treatment," had "physical examination findings [that] are unremarkable," and "examination findings indicat[ing] normal heart, lung, musculoskeletal, and neurological findings," the record is replete with medical records

indicating Plaintiff presented with and was deemed to have serious medical issues (*See, e.g.*, AR 474 (reporting hand numbness, heavy arms due to carpal tunnel, chest pains, difficulty breathing, fatigue while walking.); AR 488, 495 (emergency room visit after which diagnosed with bilateral atelectasis, mild ascending thoracic aortic aneurysm, and suspected left ventricular hypertrophy; AR 529 (told to reduce amount of time walking due to cramping feet); AR 536, 545, 550, 652, 665) (multiple reports of muscle cramping and spasms).

The ALJ also relied on the medical opinion of the CE consultant, Dr. Sabourin, an orthopedic surgeon, who issued a report in 2018, as well as the "prior administrative DDS medical consultants' determinations" issued in January and May of 2019.  (AR 15, 16.) None of these opinions, which were provided at various stages of Plaintiff's claimed disability period, are based on a full record.  Dr. Sabourin's examination was conducted in December 2018 and only addresses the musculoskeletal pain and does not reference the multitude of medical records following this exam where Plaintiff had multiple complaints of muscular cramping and spasms.  Therefore, the value of his opinion regarding Plaintiff's RFC for the period at issue following the date of the opinion is questionable.

Moreover, to the extent that the DDS medical consultants had opinions with regard to Plaintiff's heart condition in early 2019, many of Plaintiff's symptoms and ultimate diagnoses  came well after their consideration of his heart issues. (AR 551-581, 608-640, 702-729.) Therefore, these opinions hold little persuasive value regarding Plaintiff's heart issues.  *See Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.") Therefore, the Court finds that these opinions are not based on the entirety of the record, and the opinions lack adequate supporting explanation.

Based on the current state of the record, the ALJ's finding that Plaintiff had an RFC to perform medium work is not supported by substantial evidence.

**B.** **Remand**

As set forth above, the Court finds that the ALJ erred by failing to develop the record as to Plaintiff's intellectual and mental impairments. At step-two of the five-step sequential evaluation process for determining whether an individual is disabled, the ALJ did not properly develop the record which necessarily impacts the step two analysis. Moreover, because the Court found that RFC is defective as it did not reflect his limitations related to his borderline intellectual functioning and the ALJ improperly relied on medical opinions which did not consist of a review the entire medical record, the ALJ's errors were not harmless. An error is harmless if it is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). An error in step two analysis can be harmless if the ALJ had considered Plaintiff's borderline intellectual functioning in determining his RFC but the ALJ did not consider Plaintiff's borderline intellectual functioning in their decision. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (as amended) (any step-two error would be harmless given ALJ's consideration of all impairments at step four).

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). In addition, "[w]hen the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018) (internal quotations and citations omitted.)

Plaintiff requests that the Court that the Court remand for benefits, or in the alternative, additional proceedings. (Jot. Mot. at 18.) The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler*, 775 F.3d at 1099. "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should

be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981*); see also Garrison*, 759 F.3d at 1019 (noting that a Social Security case should usually be remanded to remedy defects in the administrative proceeding).

The evidence in this case does not conclusively establish that Plaintiff is disabled under the Social Security disability regulations. Rather the evidence must still be weighed and evaluated properly. Accordingly, the Court recommends that remand for additional proceedings is appropriate. On remand, the ALJ should be required to: (1) obtain and consider all evidence regarding Plaintiff's borderline intellectual functioning; and (2) consider the entirety of the record in assessing Plaintiff's RFC.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court recommends that the final decision of the Commissioner be **REVERSED**, and the case **REMANDED** for further proceedings.

This Report and Recommendation will be submitted to the Honorable Thomas J. Whelan, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **July 22, 2024** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **July 29, 2024**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  July 8, 2024

Hon. D. Thomas Ferraro
United States Magistrate Judge